■ Joann Castello, Respondent, v Anthony Castello, Appellant. [41 NYS3d 250]—

Appeal by the defendant from stated portions of a judgment of divorce of the Supreme Court, Rockland County (Gerald E. Loehr, J.), dated September 11, 2013. The judgment of divorce, upon an amended decision of that court dated August 5, 2013, made after a nonjury trial, inter alia, (a) imputed annual income to the defendant in the amount of $240,000, (b) awarded the plaintiff maintenance in the amount of $5,500 per month until she reaches the age of 63 years and 10 months and is eligible for Social Security, or until her remarriage or the death of either party, (c) awarded the plaintiff child support for the children Jennifer and Melissa, (d) directed the plaintiff to pay only 17% of unreimbursed medical expenses for the children Jennifer and Melissa, and only 12.5% of college expenses for the child Melissa, (e) directed the defendant to pay all college expenses for the child Jennifer for the fall 2013 semester, (f) directed that the defendant was solely responsible for repayment of the children's college loans, and (g) directed the defendant to pay for the car leases for all family members.

Ordered that the judgment of divorce is modified, on the facts and in the exercise of discretion, (1) by deleting the provision thereof awarding the plaintiff maintenance in the amount of $5,500 per month until she reaches the age of 63 years and 10 months of age and is eligible for Social Security, or until her remarriage or the death of either party, and substituting therefor a provision awarding the plaintiff maintenance in the amount of $5,500 per month for a period of eight years from the date of the judgment of divorce, or until her remarriage or the death of either party, (2) by deleting the provision thereof directing the plaintiff to pay 17% of unreimbursed medical expenses for the children Jennifer and Melissa, and substituting therefor a provision directing the plaintiff to pay 36.4% of those unreimbursed medical expenses, (3) by deleting the provision thereof directing the defendant to pay all college expenses for the child Jennifer for the fall 2013 semester, and substituting therefor a provision directing the defendant to pay 87.5%, and the plaintiff to pay 12.5%, of those college expenses, and (4) by deleting the provision thereof directing the defendant to pay for the car leases for all family members, and substituting therefor a provision directing the defendant to pay for the car leases for the children Jennifer and Melissa; as so modified, the judgment of divorce is affirmed insofar as appealed from, without costs or disbursements.

The parties were married in 1986, and have four children,

two of whom, Jennifer and Melissa, were unemancipated at the time of the trial in this action. After the children were born, the plaintiff was the primary caregiver for the children and a homemaker. The defendant owned a construction company. On August 27, 2012, after 26 years of marriage, the plaintiff commenced this action for a divorce and ancillary relief. At that time, the plaintiff was 49 years old and the defendant was 50. The Supreme Court appointed a neutral financial evaluator to determine the value of the defendant's construction business and his income relating thereto. The evaluator determined that the value of the company was "nil," and that the defendant's income was between $160,000 and $240,000.

Following a nonjury trial, the Supreme Court entered a judgment which, inter alia, (1) imputed annual income to the defendant in the amount of $240,000, (2) awarded the plaintiff maintenance in the amount of $5,500 per month until she reaches the age of 63 years and 10 months and is eligible for Social Security, or until her remarriage or either parties' death, (3) awarded the plaintiff child support for Jennifer and Melissa, (4) directed the plaintiff to pay 17% of unreimbursed medical expenses for Jennifer and Melissa, and 12.5% of college expenses for Melissa, (5) directed the defendant to pay all college expenses for Jennifer for the fall 2013 semester, (6) directed that the defendant was solely responsible for repayment of the children's college loans, and (7) directed the defendant to pay for the car leases for all family members. The defendant appeals.

Contrary to the defendant's contention, the Supreme Court correctly imputed income to him from his construction business. "A court is not bound by a party's account of his or her own finances, and where a party's account is not believable, the court is justified in finding a true or potential income higher than that claimed" (*Scammacca v Scammacca*, 15 AD3d 382, 382 [2005] [internal quotation marks omitted]; *see Sutaria v Sutaria*, 123 AD3d 909, 910 [2014]; *Cusumano v Cusumano*, 96 AD3d 988, 989 [2012]). The trial court is "afforded considerable discretion in determining whether to impute income to a [party]" (*Matter of Kiernan v Martin*, 108 AD3d 767, 768 [2013]; *see Kessler v Kessler*, 118 AD3d 946, 948 [2014]; *Lago v Adrion*, 93 AD3d 697, 699 [2012]), and the court's credibility determinations will be accorded deference on appeal (*see Matter of Kiernan v Martin*, 108 AD3d at 768). Here, the court providently exercised its discretion in imputing an annual income of $240,000 to the defendant, in reliance upon the report of the

neutral financial evaluator, and the testimony at trial, which established that the defendant had total control over the bookkeeping and finances of the company and funneled personal expenses through the company (*see Sutaria v Sutaria*, 123 AD3d at 910; *Cusumano v Cusumano*, 96 AD3d at 989).

"[I]t is well settled that the amount and duration of maintenance is a matter committed to the sound discretion of the trial court, and every case must be determined on its own unique facts" (*Wortman v Wortman*, 11 AD3d 604, 606 [2004]; *see Lamparillo v Lamparillo*, 130 AD3d 580, 581 [2015]; *DiBlasi v DiBlasi*, 48 AD3d 403, 404 [2008]). The overriding purpose of a maintenance award is to give the spouse economic independence, and it should be awarded for a duration that would provide the recipient with enough time to become self-supporting (*see Gordon v Gordon*, 113 AD3d 654, 655 [2014]; *DiBlasi v DiBlasi*, 48 AD3d at 404; *Bains v Bains*, 308 AD2d 557, 559 [2003]). "The factors to be considered in a maintenance award are, among others, the standard of living of the parties, the income and property of the parties, the distribution of property, the duration of the marriage, the health of the parties, the present and future earning capacity of the parties, the ability of the party seeking maintenance to be self-supporting, the reduced or lost earning capacity of the party seeking maintenance, and the presence of children of the marriage in the respective homes of the parties" (*Gordon v Gordon*, 113 AD3d at 654-655; *see* Domestic Relations Law § 236 [B] [6] [a]; *Carroll v Carroll*, 125 AD3d 710, 711 [2015]). Another factor, which this Court has considered in a marriage of long duration, is whether the party seeking maintenance was the primary homemaker and caregiver for the parties' children during the marriage (*see McCaffrey v McCaffrey*, 107 AD3d 1106, 1106-1107 [2013]; *Rodriguez v Rodriguez*, 70 AD3d 799, 802 [2010]).

Here, the Supreme Court properly awarded the plaintiff maintenance in the amount of $5,500 per month. However, the directive regarding the duration of the award, until the plaintiff reaches the age of 63 years and 10 months and is eligible for Social Security, or until her remarriage or the death of either party, was an improvident exercise of discretion (*see Naik v Naik*, 125 AD3d 734 [2015]). The plaintiff, who was 50 years old at the time of trial, testified that she was in good health, had no medical issues which would prevent her from working, and had many years of phlebotomy experience, a cosmetology license, and a real estate license which could be renewed with minimal effort. In addition, the plaintiff testified that she could

make real estate referrals while working full-time at another job. Although the marriage was of a long duration, the plaintiff stayed home to raise the children, and she did not receive a substantial equitable distribution package, we also consider that the plaintiff no longer had child-rearing responsibilities, and that the defendant was paying for most of the expenses of the children, and was responsible for paying the mortgages and costs of the marital home, as well as those of a rental property and a vacation property owned by the parties. As such, an award of maintenance of $5,500 per month for eight years, or until the plaintiff's remarriage or the death of either party, would afford the plaintiff a sufficient opportunity to become self-supporting (*see Walter v Walter*, 38 AD3d 763, 765 [2007]; *see also Perdios v Perdios*, 135 AD3d 840, 842 [2016]; *Ventimiglia v Ventimiglia*, 307 AD2d 993, 995 [2003]).

Contrary to the defendant's contention, the Supreme Court, upon finding that the plaintiff was the custodial parent of Jennifer and Melissa, the two unemancipated children, properly directed the defendant to pay child support for those children (*see* Domestic Relations Law § 240 [1-b] [f] [10]). To the extent that the defendant asserts that it was improper to award child support to the plaintiff because, after the trial, the unemancipated children resided in the defendant's rented house, that assertion is based on matter dehors the record and is not properly before us on this appeal.

Pursuant to Domestic Relations Law § 240 (1-b) (c) (5) (v), each parent's share of unreimbursed health care expenses is to be prorated in the same proportion as each parent's income is to the combined parental income (*see Goldberg v Goldberg*, 98 AD3d 944, 944 [2012]). Here, the Supreme Court erred in prorating each parent's share of such expenses 83% to the defendant and 17% to the plaintiff (*see id.*). Rather than remit the matter to the Supreme Court, we recalculate the parties' pro rata shares of the unreimbursed medical expenses in the interest of judicial economy (*see Lueker v Lueker*, 72 AD3d 655, 658 [2010]).

In determining each party's pro rata share of these obligations, the combined parental income is calculated by adding together the income of both parents (*see* Domestic Relations Law § 240 [1-b] [b] [3]; [c] [1]). "Income" is defined as gross income, as should have been reported on the party's most recent tax return, minus, inter alia, monies paid for maintenance and costs for Federal Insurance Contributions Act (FICA) taxes (*see* Domestic Relations Law § 240 [1-b] [b] [5]). In this case, the monies paid for maintenance are to be subtracted

from the defendant's income, and added to the plaintiff's income, since those payments are considered taxable income to the plaintiff (*see Lueker v Lueker*, 72 AD3d at 658). After the combined parental income is determined, each party's pro rata share of this amount is calculated (*see* Domestic Relations Law § 240 [1-b] [c] [2]).

Here, the Supreme Court imputed income of $240,000 to the defendant and $30,000 to the plaintiff. From his imputed income of $240,000, the defendant was entitled to a deduction for his total annual maintenance payment of $66,000 and FICA taxes of $10,306.20, giving the defendant an adjusted income of $163,693.80. Although the court deducted the correct amount of FICA taxes ($2,295) from the plaintiff's imputed income of $30,000 to arrive at $27,705, the court should have added the total annual maintenance the plaintiff received to this amount to arrive at an adjusted income of $93,705 for the plaintiff (*see Kaufman v Kaufman*, 102 AD3d 925, 927 [2013]). Of the combined parental income of $257,398.80, the defendant's pro rata share of unreimbursed medical expenses is 63.6% and the plaintiff's pro rata share is 36.4%.

Although a court may direct a parent to contribute to a child's college education pursuant to Domestic Relations Law § 240 (1-b) (c) (7), unlike the obligation for unreimbursed medical expenses, educational expenses are not necessarily prorated in the same percentage as each parent's income bears to the combined parental income (*see Matter of Williams v Rodriguez*, 66 AD3d 914, 915 [2009]; *Cimons v Cimons*, 53 AD3d 125, 131 [2008]). Such costs may be awarded based upon "the circumstances of the case and of the respective parties and in the best interests of the child, and as justice requires" (Domestic Relations Law § 240 [1-b] [c] [7]). Here, the Supreme Court did not improvidently exercise its discretion in directing the plaintiff to pay only 12.5% of college expenses for Melissa, given the disparity in income between the parties, and the fact that the defendant had always been responsible for paying for college for the children (*see Matter of Williams v Rodriguez*, 66 AD3d at 915; *see also Harris v Harris*, 97 AD3d 534, 537 [2012]). However, the court improvidently exercised its discretion in failing to direct the plaintiff to pay 12.5% of the college expenses for Jennifer for the fall 2013 semester (*see Harris v Harris*, 97 AD3d at 537; *Lueker v Lueker*, 72 AD3d at 659).

Contrary to the defendant's contention, the Supreme Court did not improvidently exercise its discretion in directing that he was solely responsible for repayment of the children's college loans. The defendant failed to establish when the college

loans were incurred and, therefore, the court providently exercised its discretion in declining to equitably apportion the responsibility for these debts between the parties (*see Feldman v Feldman*, 204 AD2d 268, 270 [1994]).

The defendant is correct that the Supreme Court erred in directing him to continue to make the lease payments on vehicles leased by his emancipated children. The obligation of a parent to support his or her child terminates when the child reaches the age of 21 years (*see* Family Ct Act § 413 [1]; *Bani-Esraili v Lerman*, 69 NY2d 807, 808 [1987]). Therefore, although the defendant has provided support for his emancipated children, he cannot be ordered to do so (*see Matter of Silver v Akerson*, 34 AD3d 487, 488 [2006]; *Matter of Cancilla v Cancilla*, 22 AD3d 490, 491 [2005]).

With respect to the plaintiff's car lease, given the amount of the monthly maintenance award, and the fact that the defendant was responsible for paying all costs associated with the plaintiff's housing and the children's expenses, the Supreme Court improvidently exercised its discretion in directing the defendant to also pay for the plaintiff's car lease. Such payment, in effect, constituted additional maintenance (*see J.S. v J.S.*, 19 Misc 3d 634, 652 [Sup Ct, Nassau County 2008]).

When the Supreme Court signed the proposed judgment of divorce, it struck a provision which would have expressly granted concurrent jurisdiction to the Family Court with respect to the issues of child support and maintenance. The defendant contends that, by striking that provision, the Supreme Court retained exclusive jurisdiction, and that such retention was improper. Contrary to the defendant's contention, the striking of that provision does not bar the Family Court from exercising concurrent jurisdiction. "Unless the Supreme Court expressly retains exclusive jurisdiction to enforce the terms of a judgment of divorce, the support provisions of the judgment may be enforced in the Family Court as well" (*Matter of Hausman v Hausman*, 27 AD3d 464, 464 [2006]; *see Matter of O'Dell v O'Dell*, 104 AD3d 770, 771 [2013]; *Matter of Leontitsis v Leontitsis*, 128 AD2d 535, 535 [1987]). Here, the judgment of divorce does not contain a provision limiting enforcement jurisdiction to the Supreme Court (*see Matter of Hausman v Hausman*, 27 AD3d at 464). Dillon, J.P., Roman, Hinds-Radix and Connolly, JJ., concur.